UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
CRIMINAL NO. 01-246(RHK/JSM)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>BASIM OMAR SABRI,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **UNITED STATES' MOTION IN LIMINE REGARDING ADMISSIBILITY OF PRIOR BAD ACT EVIDENCE** |

The United States, by and through its attorneys, Thomas B. Heffelfinger, United States Attorney, and Michael W. Ward and Nicole A. Engisch, Assistant United States Attorneys, hereby submits the United States' Motion in Limine Regarding Admissibility of Prior Bad Act Evidence.[1]

Out of an abundance of caution, on November 18, 2004, the government provided the defendant with a detailed Rule 404(b) notice. As described in that notice, and as discussed in further detail in the Government's Trial Brief at pp. 14-21, the prior bad act evidence of the defendant generally falls within four categories: 1) the defendant's involvement as an intermediary in a $4,000 loan from Selwin Ortega to Brian Herron; 2) the defendant's engagement in improper campaign contributions; 3) the defendant's relationship with city inspectors; and 4) the defendant's relationship with the Minneapolis city council.

[1]This Motion is also submitted as a formal response to the defendant's motion in limine to exclude the government from introducing prior bad act evidence under Rule 404(b).

Additionally, the government intends to introduce evidence of other acts of corruption directed at city officials or employees and members of a neighborhood community group. Such evidence is relevant and highly probative to demonstrate the defendant did in fact have a predisposition to engage in acts of bribery at the time he was contacted by an agent for the government, and thus, should be admissible not only under Rule 404(b) but under Rule 405(b) or comparable rules. But, if the Court is of the view that it is solely offered under Rule 404(b), the prior bad act evidence should nonetheless be admissible because it fits squarely within the rubric of the rule.

As the Court is aware, once the defendant establishes the entrapment defense, the burden of proof shifts to the government to prove beyond a reasonable doubt that the defendant was predisposed to commit the crimes charged in the indictment. United States v. Crump, 934 F.2d 947, 953 (8th Cir. 1991). As a result, in cases where the defendant has raised an entrapment defense, courts "have consistently held that prior bad act evidence is admissible to show a defendant's predisposition . . . ." Id. (citations omitted); see Sorrells v. United States, 287 U.S. 435, 451 (1932)("[I]f the defendant seeks acquittal by reason of entrapment he cannot complain of an appropriate and searching inquiry into his own conduct and predisposition as bearing upon that issue."); United States v. Coleman, 284 F.3d 892, 894 (8th Cir. 2002)("[b]ecause [the defendant] claimed a defense of entrapment, evidence of prior bad acts was admissible to show [the defendant's] predisposition to

the bad acts."); see, also, United States v. Van Horn, 277 F.3d 48, 56-57 (1st Cir. 2002)(citations omitted) ("in situations where the defendant employs entrapment as a defense to criminal liability, prior bad acts relevant to a defendant's predisposition to commit a crime are highly probative and can overcome the Rule 404(b) bar."); United States v. Ward, 793 F.2d 551, 555 (3d Cir. 1986)("[e]vidence of predisposition, for entrapment purposes, is used for reasons similar to [Rule 404(b)'s stated purposes of proving plan and motive] and is not simply intended to establish the defendant's bad character.").

Indeed, at least some courts recognize that, where predisposition is in issue, prior bad act evidence should be admissible not under Rule 404(b) but under Rule 405(b). See, e.g., United States v. Manzella, 782 F.2d 533, 546 n. 5 (5th Cir. 1986)(where entrapment was raised, court observed that Rule 404(b) did not apply because the defendant's character is "an essential element of a charge, claim, or defense"; instead, the proper rule is Rule 405(b), which allows proof of specific instances of the defendant's conduct when his character is an essential element of a charge, claim, or defense.). Still other courts find that prior bad act evidence is admissible both to "prove defendant's actions in conformity therewith," a purpose which is not permitted under Rule 404(b), as well as to prove various delineated exceptions to Rule 404(b). See Crump, 934 F.2d at 953; Coleman, 284 F.3d at 894. The point to be drawn from all of these decisions is that, regardless of the relied-upon authority, when entrapment is raised

as an affirmative defense, the defendant's prior bad acts are relevant and admissible on the issue of his predisposition.

In the defendant's trial brief (at p. 3), he contends that "[t]he United States Supreme Court has made it clear that the Government must prove that the disposition existed prior to the time Defendant was **first** approached by the government agents." (Emphasis in original.) He then contends that the defendant was first approached by a government agent, namely, Selwin Ortega, on October 27, 1998, and, therefore, "[e]vidence concerning Defendant's alleged predisposition after 1998 is not relevant to the entrapment defense." Id. His proposed jury instructions reflect this argument. See Defendant' Proposed Ins. No. 25 (Entrapment) ("If the defendant before being contacted by Selwin Ortega on October 27, 1998, did not have any intent or disposition to commit the crime charged . . . .").

The government disagrees with the defendant's argument about the "cut-off" date for predisposition evidence. Although it is correct that Selwin Ortega, in his role as a government agent, first was contacted by the defendant in October 1998, at that time, the defendant was not a subject or target of the government's investigation. The government did nothing more than begin recording conversations that Selwin Ortega had with the defendant, among others. There was no plan by the government to capture the defendant engaged in unlawful activities, and the tapes clearly show that no specific criminal conduct or transaction was ever suggested by the government through Ortega.

Only in late June 2001 did the defendant become a target of a government investigation, and Selwin Ortega had nothing to do with the subject matter of that investigation (a hotel project) and in fact had no contact with the defendant. Instead, the alleged government agent was Brian Herron who responded to the defendant's earlier unsolicited offer of a bribe. Thus, it is the government's position that the pertinent time frame for determining predisposition is not prior to October 1998, but prior to late June 2001, the only arguable date the relevant government agent made any comment or presented any opportunity regarding the commission of the crime. See United States v. Dion, 762 F.2d 674, 687-88 (8th Cir. 1985), rev'd in part on other grounds, 476 U.S. 734 (1986)(one of the factors to be weighed in determining predisposition is "the state of mind of a defendant before government agents make any suggestion that he shall commit a crime....").

In any event, the issue is a legal question without immediate evidentiary consequence. That is because the tape-recorded evidence of the defendant's state of mind is equally probative of his predisposition pre-1998. Thus, there is no need for the Court to resolve this dispute until the charge conference regarding jury instructions.

The issue of predisposition "requires an examination of the defendant's personal background, character, and state of mind, as well as the extent to which the government agent instigated or induced the criminal act." United States v. King, 803 F.2d 387, 390 (8th Cir. 1986). Thus, the predisposition inquiry is examined

under "a flexible, multi-factor analysis." Dion, 762 F.2d at 687-88 (such factors include, among others, "whether the defendant was engaged in an existing course of conduct similar to the crime for which he is charged"). As a result, courts find that it is inappropriate to draw a bright line cut-off point with respect to predisposition evidence. United States v. Lafreniere, 236 F.3d 41, 47 n. 3 (1st Cir. 2001)(while "[i]t is true that, when a defendant raises a defense of entrapment, the government must show that he was predisposed to commit the charged crime prior to his contact with government agents," it is also true that "the government may use the defendant's behavior after he was approached by government agents as evidence of his predisposition prior to meeting with the agents.")(emphasis added); see also United States v. Johnson, 2000 WL 1290317 at *6 (6th Cir. 2000) (holding that the defendant "is incorrect in his argument that this Court should ignore any predisposition evidence stemming from incidents after [the defendant's] first contact with [government agent].").

Indeed, courts routinely allow the government to introduce evidence of the defendant's conduct and communications with the government agents where it is relevant to the issue of predisposition. Dion, 762 F.2d at 687 (the defendant's "conduct in the negotiations with [government] agents also evidenced his predisposition."); United States v. Pinque, 234 F.3d 374, 378-79 (8th Cir. 2000) (evidence of defendant's own boasting to undercover agent about his ability to obtain large amounts of cocaine constituted sufficient "predisposition" to defeat entrapment

claim); United States v. Lee, 634 F.2d 383, 385 (8th Cir. 1980) ("[t]he most convincing evidence of defendant's predisposition is the series of taped phone conversations between the defendant and the [government] agents. These conversations establish that the defendant 'conducted himself like a businessman dealing in narcotics, not like an innocent dupe helping a beleaguered friend.'").[2]

Thus, in this case, the prior bad act evidence that comes in the form of the defendant's boasting to government agents, both to Herron and Ortega, is highly probative and should be admissible on the issue of his predisposition to engage in public corruption. The same is also true with respect to prior bad acts made outside the context of communications with the governments agents, even if they took place sometime after Ortega's taped communications with the defendant.

## CONCLUSION

For all of the above reasons, evidence of the defendant's prior bad acts should be admissible, among other reasons, to negate an affirmative defense of entrapment. Such evidence should not be artificially restricted to that which occurred prior to October 1998, the date Selwin Ortega first began serving as a government

[2]Among other purposes, the defendant's conversations with agents, as in this case, often relay information about acts that occurred sometime prior to the date of the conversations.

agent in an investigation that was originally directed to other subjects.

Dated: November 19, 2004

Respectfully submitted,

THOMAS B. HEFFELFINGER
United States Attorney

s/Nicole A. Engisch

BY: MICHAEL W. WARD
Assistant U.S. Attorney
Attorney ID Number 190755
BY: NICOLE A. ENGISCH
Assistant U.S. Attorney
Attorney ID No. 215284