UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
CR 01-246 (RHK/JSM)

------------------------------

UNITED STATES OF AMERICA,

PLAINTIFF,

VS.

BASIM OMAR SABRI,

DEFENDANT.

------------------------------

**DEFENDANT SABRI'S TRIAL MEMORANDUM RE: ENTRAPMENT**

## INTRODUCTION

For purposes of the Entrapment defense, whether a defendant was disposed to commit the criminal act is determined prior to time the defendant is approached by government agents. In the instant case, Mr. Sabri was approached by two separate government agents. First, he was approached by Selwin Ortega in 1998. Mr. Ortega had been working with the Government since at least August 1998, when he reported to the FBI that Brian Herron had extorted $7,000.00 from him. The Government instigated repeated contact between Mr. Ortega and Mr. Herron, and then, starting on December 7, 1998, between Mr. Ortega and Mr. Sabri. When Mr. Herron was finally arrested by the Government in 2001, the Government set up recorded conversations between Mr. Herron and Mr. Sabri. These recorded statements occurred in July 2001.

A critical issue in this case that must be determined prior to trial is whether contact with government agents for purposes of the Entrapment defense occurred when Mr. Sabri was first approached by Mr. Ortega in 1998 or when Mr. Herron began working as an agent in 2001. The Government argues that Mr. Sabri was not first approached by Government agents until he was

approached by Mr. Herron in July 2001. Thus, the Government argues that the jury must determine whether Mr. Sabri was predisposed to commit the crime in July 2001, and evidence of Mr. Sabri's actions prior to that date may be used to determine whether Mr. Sabri was disposed to commit the crime.

The Government's is argument untenable because it ignores the fact that Mr. Sabri was approached by Mr. Ortega, who was working as a Government agent, in 1998. Since the initial contact with the Government agent occurred in 1998, the jury must determine whether Mr. Sabri was predisposed to commit the crime in December 1998. Any evidence regarding Mr. Sabri's alleged predisposition after December 1998 would not be relevant to determine whether Mr. Sabri was disposed to commit the crime.

## ARGUMENT

"The purpose behind the entrapment defense is to prevent law enforcement officers from manufacturing crime." United States v. Hinton, 908 F.2d 355, 358 (8th Cir. 1990). Whether a defendant has been entrapped is generally a jury question. United States v. Pfeffer, 901 F.2d 654, 656 (8th Cir.1990). The entrapment defense has two elements:

1. Government action to induce or otherwise cause the defendant to commit the crime;
2. Defendant's lack of predisposition to commit the crime.

"The defendant carries the initial burden of presenting some evidence that he or she was induced by government agents to commit the offense." United States v. McGuire, 808 F.2d 694, 696 (8th Cir.1987). To satisfy the inducement element, there must be evidence of "government conduct that 'creates a substantial risk that an undisposed person or otherwise law-abiding citizen would commit the offense.'" United States v. Stanton, 973 F.2d 608, 609 (8th Cir. 1992), quoting United States v. Mendoza-Salgado, 964 F.2d 993, 1004 (10th Cir.1992).

Once the inducement is shown, the Government must prove beyond reasonable doubt that the defendant was disposed to commit the criminal act prior to being approached by government agents. Jacobson v. United States, 503 U.S. 540, 545 (1992). The United States Supreme Court has made it clear that the Government must prove that the predisposition existed prior to the time Defendant was **first** approached by the government agents. Id. at 547 n.1. In U.S. v. Brooks, 215 F.3d 842 (8th Cir. 2000), the Eight Circuit addressed when the predisposition should be examined. The Court explained:

> In examining a defendant's alleged predisposition to commit an offense, we examine whether the defendant "possessed the requisite predisposition prior to the Government's investigation and [whether] it existed independent of the Government's many and varied approaches to [the defendant]." See Jacobson, 503 U.S. at 553, 112 S.Ct. 1535; see also United States v. Fedroff, 874 F.2d 178, 182 (3d Cir.1989) ("In general, predisposition may be defined as the defendant's inclination to engage in the crime for which he was charged **measured before his initial exposure to government agents**.") (emphasis added) (citation and footnote omitted).

Id. at 846. The Eighth Circuit specifically concluded that evidence after the initial contact is “irrelevant to the issue of his predisposition as it existed before [the initial contact]”. Id.

The predisposition element "focuses upon whether the defendant was an unwary innocent or, instead, an unwary criminal who readily availed himself of the opportunity to perpetrate the crime." Mathews v. United States, 485 U.S. 58, 63 (1988). Thus, "determining a defendant's predisposition requires examination of the defendant's personal background to see 'where he sits on the continuum between the naive first offender and the streetwise habitue.' " United States v. Kummer, 15 F.3d 1455, 1459 (8th Cir.1994) (quoting United States v. Lard, 734 F.2d at 1293). In United States v. Dion, 762 F.2d 674 (8th Cir. 1985), the Court identified ten factors that other courts have used in determining predisposition. 762 F.2d at 687-88, rev’d in part on other grounds 476 U.S. 734 (1986). These factors are:

(1) whether the defendant readily responded to the inducement offered;
(2) the circumstances surrounding the illegal conduct;
(3) the state of mind of a defendant before government agents make any suggestion that he shall commit a crime;
(4) whether the defendant was engaged in an existing course of conduct similar to the crime for which he is charged;
(5) whether the defendant had already formed the "design" to commit the crime for which he is charged;
(6) the defendant's reputation;
(7) the conduct of the defendant during the negotiations with the undercover agent;
(8) whether the defendant has refused to commit similar acts on other occasions;
(9) the nature of the crime charged; and
(10) the degree of coercion present in the instigation law officers have contributed to the transaction relative to the defendant's criminal background.

Id. (Internal citations omitted). If the Government is unable to prove predisposition beyond a reasonable doubt, then the Defendant must be found not guilty.

In the instant case, Mr. Sabri was first approached by government agents when Selwin Ortega began talking with Mr. Sabri in 1998. It is indisputable that Selwin Ortega was acting as a government agent when these contact occurred. In fact, Mr. Ortega had signed an agreement to act as a government agent on December 22, 1998, and had been directed by the F.B.I. agents to make contact with Mr. Sabri.

The contacts between Mr. Ortega and Mr. Sabri began on October 28, 1998, and the first significant recorded conversation between Mr. Ortega and Mr. Sabri occurred on December 7, 1998. The Government agents prepared Mr. Ortega for a recorded meeting with Mr. Sabri, and recorded an hour long conversation between Mr. Ortega and Mr. Sabri. During that conversation, Mr. Ortega tells Mr. Sabri the following:

I have been doing really good in my business, [but] I lack connections. (p. 9)

This coming year I want to put aside at least seventy thousand dollars. You know, that

> we can use. So, ah, the future you know we can get better result in our business. (p. 21).
> [Sabri responds "Ah-huh."]
> The problem is I don't know how to use that money, where to direct that money.
>
> And ah what I was going to ask you you know I know that for you and I money is no problem 'cause we have plenty of money and there is times when you know they might need a, people downtown, they might need a loan (UI) that I can get for them you know if they need it. (UI) anyway. So things like that I don't know those things (UI) need to go to… (p. 45).
> [Sabri responds "when you say people downtown, who?"]
> …city council so, you know, they always have problems with money, looks like they got no money. (p.46).
> ….
> …some of these guys need a loan. You know, we can give it to them because, you know. (p.46).
> [Sabri responds "Ah-hum"]
> But you know I, right now, you know, I do not know. See I don't have a relationship with (UI). (p.46).
> ….
> Okay. Hey you know maybe in the future when you're not so busy you know you can introduce to us, you know to your friends from downtown and let them know, that they can trust us, they can work with us, you know, totally. (p.47-48)
> ….
> From Brian to Niland and, you know, we want to be part and work with them, you know. (p.48)

It is clear from these statements by Mr. Ortega during their recorded conversation on 12-7-98, that Mr. Ortega was informing Mr. Sabri that he was having difficulties with inspectors and was attempting to ascertain whether Mr. Sabri had connections in city government that he could introduce to Mr. Ortega.

The government set up additional recorded conversations between Mr. Ortega and Mr. Sabri on December 10, 1998, January 22, 1999, February 17, 1999, April 29, 1999, June 2, 1999, June 8, 1999, June 17, 1999, July 21, 1999, July 29, 1999, December 5, 2000, February 21, 2001, February 24, 2001, April 17, 2001. The Government's Trial Brief contains a detailed list of what it apparently considers the "highlights" of these conversations. In the Government's view, these conversations between Mr. Ortega and Mr. Sabri provide evidence that Mr. Sabri was

predisposed to commit the crimes.[1]

Despite the existence of at least 14 recorded conversations between Mr. Ortega and Mr. Sabri, comprising of hours upon hours of tape, the Government takes the position that Mr. Sabri was not first approached by government agents until he was approached by Brian Herron in 2001. This position is untenable and cannot be reconciled with the activities of government agent Selwin Ortega.

## CONCLUSION

For the foregoing reasons, Defendant Sabri respectfully requests that this Court determine that the initial contact with the Government agent occurred when Mr. Sabri was approached by Selwin Ortega in 1998, and thus the jury must determine whether Mr. Sabri was predisposed to commit the crime in December 1998. In addition, Defendant Sabri respectfully requests that this Court rule any evidence regarding Mr. Sabri's alleged predisposition after December 1998 is not relevant to determine whether Mr. Sabri was disposed to commit the crime.

Respectfully submitted,

BIRRELL & NEWMARK, LTD.

Dated: November 8, 2004

By: s/ Andrew S. Birrell

Andrew S. Birrell
Attorney Id. #133760
Attorneys for Defendant
333 South Seventh Street, Suite 2270
Minneapolis, Minnesota 55402
Telephone: (612) 871-7000

[1] What is unclear for the Government's Trial Brief is how the Government can claim this is evidence of predisposition when it occurred after the initial contact with the Government's agent.